NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BRADLEY WALKER, *Petitioner/Appellant*,

*v.*

BIANCA MARIE GUY, *Respondent/Appellee*.

No. 1 CA-CV 20-0170 FC
FILED 10-29-2020

Appeal from the Superior Court in Maricopa County
No. FC2004-004798
The Honorable Greg S. Como, Judge

**AFFIRMED**

COUNSEL

Bradley Walker, Glendale
*Petitioner/Appellant*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

**M c M U R D I E**, Judge:

¶1    Bradley Walker ("Father") appeals from the superior court's orders regarding parenting time and child support. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2    This case is the latest in a series of proceedings to modify child support and parenting time for these parents. In 2011, Bianca Marie Guy ("Mother") relocated to Colorado. Their daughter, Brielle, continued to live with Father in Arizona. In January 2014, the superior court entered a detailed long-distance parenting plan that included, *inter alia*, time for phone calls and video chats.

¶3    In September 2019, Mother petitioned for mediation, alleging that Father was interfering with her phone calls with Brielle, and requested a parenting plan modification. Father responded, asking the court to modify the parenting time and child support.

¶4    In October 2019, the court ordered a family court conciliator to interview Brielle to discuss her relationship with her parents. *See* Ariz. R. Fam. Law P. 12. The parties stipulated that they would not receive the interview's audio recording, and only the judge would read the written report. Ariz. R. Fam. Law P. 12(c)(1). Nonetheless, during a hearing, the court disclosed information from the report. The court told Mother that Brielle wished to spend less time in Colorado but hoped Brielle would be more amenable to Arizona parenting time with Mother.

¶5    In December 2019, the court scheduled a trial and ordered the parties to file a pretrial statement within five days of the trial. The court ordered the statements to include child-support worksheets and a list of exhibits with noted objections to the exhibits. The order stated that a party who failed to list an exhibit would have to show good cause for the omission, and a party who failed to object to an exhibit waived any objection to it. The court also ordered the parties to exchange exhibits and provide them to the clerk no less than five days before the trial. Neither party filed nor exchanged exhibits by the court's deadline.

¶6    Based on the parties' failure to abide by the order, the court initially determined that it would not consider the exhibits. But the court said for "demonstrative purposes," it would consider the proposed child-support worksheet if its parenting-time decision implicated

child-support issues. The court also accepted Mother's W-2s after she informed the court that she had only received them days before the hearing.

¶7        Mother testified about her medical issues and employment and claimed she paid $63 toward Brielle's health insurance. Father testified that he paid roughly $118 for Brielle's health insurance.

¶8        After the hearing, the court modified the parenting plan, reducing Mother's parenting time from 100 to 41 days per year. After applying the child-support guidelines, the court reduced Mother's child-support obligation to zero.

¶9        Father filed a motion for reconsideration, alleging that Mother would retaliate against Brielle after the court disclosed that Brielle would prefer to live in Arizona. Father requested the court reconsider Mother's parenting-time allocation on certain three-day weekends for the remainder of the year. If she retaliated, Father asserted the court should suspend Mother's parenting time until further review. Father further alleged that the court erred by failing to require Mother to pay any child support. The court summarily denied the motion.

¶10        Father appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

¶11        Father argues the superior court erred by disclosing Brielle's interview's content and that such disclosure will result in retaliation by Mother. He further contends the superior court erred by admitting Mother's exhibits and then determining child support. Father requests this court to vacate the parenting-time order and recalculate child support using Arizona's minimum wage.

¶12        Mother did not file an answering brief. A party's failure to file a responsive brief when debatable issues are raised can constitute a confession of reversible error. *Bugh v. Bugh*, 125 Ariz. 190, 191 (App. 1980). At our discretion, we will consider the case's merits. *See id.*

A.        **The Superior Court Did Not Abuse Its Discretion Regarding Mother's Parenting Time**.

¶13        The superior court must establish parenting time according to the best interests of a child. A.R.S. § 25-403(A). Once established, a court must find a continuing change of circumstances to modify parenting time.

*See Pridgeon v. Superior Court*, 134 Ariz. 177, 179 (1982). The party seeking to modify parenting time has the burden to show the change in circumstances. *Id.* at 181. A reviewing court will not reverse a superior court's decision regarding parenting time absent an abuse of discretion, "i.e., a clear absence of evidence to support its actions." *Id.* at 179; *see Fought v. Fought*, 94 Ariz. 187, 188 (1963) ("[T]he record must be devoid of competent evidence to support the decision of the trial court . . . and a judgment will not be disturbed when there is any reasonable evidence . . . .").

**¶14**　　　　Father alleges that Mother's past acts indicate she will retaliate against Brielle for telling the interviewer she wished to spend less time in Colorado with Mother. In his motion to reconsider, Father argued the disclosure of Brielle's interview warranted reducing Mother's parenting time.

**¶15**　　　　Rule 12 does not prohibit the court from disclosing some or all the interview report's contents, even if the parties have stipulated to the contrary. While Rule 12(d)(2)(D) states the interviewer should warn the child before the interview "that information the child provides to the court will be provided to the parties in the case unless the parties have stipulated otherwise," the court has the discretion to disclose the information it believes is necessary to effectuate its order. *See* A.R.S. § 25-403(A)(4) (requiring the court to consider and make specific findings regarding "the wishes of the child" regarding legal decision-making and parenting time if "of a suitable age and maturity").

**¶16**　　　　Moreover, Father's alleged change in circumstances in the reconsideration motion is not a change at all. His expected harm has not occurred. The superior court did not abuse its discretion by concluding that this anticipated harm was not a change in circumstances justifying further modification of Mother's parenting time. *See, e.g.*, *Porter v. Smith*, 1 CA-CV 16-0512 FC, 2017 WL 2470827, at *2, ¶ 6 (Ariz. App. June 8, 2017) (mem. decision) ("[A] substantial change in circumstances must *precede* alteration of the custody order.") (emphasis added).

**B.**　　**The Superior Court Did Not Err When Determining Child Support.**

**¶17**　　　　Rule 49(b) requires that parties disclose certain information no later than 40 days after the filing of the first responsive pleading, and a party must serve amended disclosures within 30 days after it is discovered or "reasonably in advance of the hearing." If a party fails to disclose information according to the rule, the Court may refuse to admit it unless

the party could not have disclosed it earlier and disclosed the information as soon as practicable. Ariz. R. Fam. Law P. 65(c).

¶18             Here, the superior court ordered the parties to exchange "all relevant information, documents[,] and exhibits" at least 30 days before the trial and that five business days before trial, the parties exchange "any exhibits they shall seek to admit into evidence."

¶19             Father argues Mother failed to produce a copy of her child-support worksheet as an exhibit within five business days as required by the superior court's order. He claims he was prejudiced by the lack of opportunity to contest the contents of the worksheet. But Father does not support his assertion with a showing of prejudice or explain what evidence he would have presented if he had received a copy of Mother's child-support worksheet earlier. In dissolution proceedings, we cannot overturn the superior court's decision absent prejudice. Ariz. R. Fam. Law P. 86 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Fuentes v. Fuentes*, 209 Ariz. 51, 57, ¶ 27 (App. 2004) ("[W]e will not disturb the trial court's admission of the document absent both a clear abuse of discretion and resulting prejudice.").

¶20             Moreover, it is not clear that Father would have benefitted from an earlier disclosure of Mother's child-support worksheet. By comparison, Father's child-support worksheet deviates from the court's as follows: (1) a $17.33 greater monthly income for Father; (2) $4 greater insurance payments from mother; (3) zero (as opposed to one) additional child that Mother must support; and (4) 2018 (rather than 2020) as the applicable year for the child-support guidelines. The first two distinctions would decrease Mother's child-support obligations. The third and fourth are due to errors by Father. Notably, although Father argues Mother underestimated her income and the court should have imputed Arizona's minimum wage, Father and the court attributed the same monthly earnings to Mother, both above the minimum wage.

¶21             Citing to A.R.S. § 25-503(C), Father also argues that because a petition to modify child support was never filed, the Arizona Department of Economic Security ("ADES") was never notified of a hearing that might change child support and, therefore, no representative was present during the hearing. He argues if an ADES attorney had been present, the hearing's outcome might have been different.

**¶22**        A.R.S. § 25-502(C) authorizes ADES to petition to modify child support. While ADES may object when it is not included in a Title IV-D[1] modification procedure, Father has no standing to object on its behalf.

**¶23**        Regarding whether the court lacked the authority to modify the award, Father requested a child-support modification to reflect any change in parenting time in anticipation of the hearing. It should not have been a surprise to Father that the court revisited the issue of child support. *See Sundstrom v. Flatt*, 244 Ariz. 136, 138, ¶ 7 (App. 2017) (Neither the rule nor the statute requires the party who is ultimately successful "to be the party that originally petitioned the court.").

## C.    The Superior Court Correctly Determined There was a Continuing Change in Circumstances.

**¶24**        Father argues that recalculating child support was inappropriate because neither party showed "good cause or permanent and sustained change of circumstances" at the evidentiary hearing for such a modification.

**¶25**        The court may only modify child support after a substantial and continuing change in circumstances. A.R.S. § 25-327(A). "A fifteen percent variation in the amount of the order will be considered evidence of substantial and continuing change of circumstances." *Birnstihl v. Birnstihl*, 243 Ariz. 588, 592–93, ¶ 16 (App. 2018) (citing A.R.S. § 25-320 app. § 24(B) ("Guidelines")). However, the superior court must redetermine child support per Arizona's child-support guidelines when it issues an order modifying parenting time. A.R.S. § 25-403.09; *Heidbreder v. Heidbreder*, 230 Ariz. 377, 380, ¶¶ 6–7 (App. 2012).

**¶26**        The superior court reduced Mother's parenting time by more than fifty percent and concluded the parties' current incomes constituted a sufficient change in circumstances to justify modifying the child support. In December 2013, the superior court found that Father's adjusted gross monthly income was $1540, and Mother's was $1760. In the current order, the court found the parties' monthly income at $4030 for Father and $1647 for Mother. The significant changes in the parties' monthly incomes constituted a change in circumstances justifying a modification of child support. *Nia v. Nia*, 242 Ariz. 419, 423, ¶ 10 (App. 2017). Far from abusing

---

[1]        Title IV-D refers to Title IV-D of the Social Security Act. 42 U.S.C. §§ 651 to -669.

its discretion, once the court modified parenting time and found a sustained change of circumstances, it complied with the statutory requirement by applying the child-support guidelines. *See id.* at 421, ¶ 1 ("[O]nce the superior court determines there is a substantial and continuing change in circumstances, the court must apply the Arizona Child Support Guidelines.").

## D. The Superior Court Did Not Err by Its Calculation of Mother's Child-Support Obligations.

**¶27** We review the superior court's modification of a child-support order for an abuse of discretion. *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 7 (App. 2015). We review the superior court's interpretations of the statutes and guidelines governing child-support calculations *de novo*. *Id.*

**¶28** Father argues the superior court misapplied the child-support guidelines. The court applied the guidelines by accepting Mother's testimony that she paid $63 per month toward Brielle's health insurance and Father's testimony that he paid $118. Mother's W-2s corroborate the court's findings regarding her wages. The court correctly accounted for Mother's dependent child from a different marriage. Guidelines § 6(D) (superior court should deduct from the gross income of a parent "support of natural or adopted children of other relationships"). Likewise, the court correctly applied the child-support guidelines to 2020 because the new child-support obligation took effect in 2020.

**¶29** Similarly, Father argues the court erred by requiring him to pay all of Brielle's uninsured medical costs. However, the child-support guidelines leave the insured expenses' proportion to the superior court's discretion. *Amadore v. Lifgren*, 245 Ariz. 509, 518, ¶ 30 (App. 2018) (as amended) ("If our supreme court meant for these costs to be divided in proportion to income, then it could have included language to that effect, as it has done with other child support obligations."). The superior court did not err.

**CONCLUSION**

¶30     We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:     AA